# Supreme Court of Florida

_____

No. SC2026-0449

_____

**JAMES AREN DUCKETT,**
Appellant,

vs.

**STATE OF FLORIDA,**
Appellee.

_____

No. SC2026-0450

_____

**JAMES AREN DUCKETT,**
Petitioner,

vs.

**STATE OF FLORIDA,**
Respondent.

July 8, 2026

PER CURIAM.

Nearly four decades ago, James Aren Duckett was convicted of the sexual battery and first-degree murder of eleven-year-old Teresa McAbee. For the latter crime, he was sentenced to death. On

February 27, 2026, Governor Ron DeSantis signed a warrant scheduling Duckett's execution for March 31, 2026.

Following issuance of the death warrant, Duckett submitted several filings, including a motion for postconviction DNA testing pursuant to section 925.11, Florida Statutes, and Florida Rule of Criminal Procedure 3.853. The circuit court granted that motion. Subsequently, Duckett filed his fifth successive motion for postconviction relief under Florida Rule of Criminal Procedure 3.851. Before DNA testing was finalized, the circuit court summarily denied that motion. Duckett appealed that order and moved for a stay of execution. He also petitioned for a writ of habeas corpus and requested oral argument.

On March 26, 2026, we stayed Duckett's execution to allow for DNA testing to be completed. Later, the laboratory carrying out the testing reported its findings. According to the Florida Department of Law Enforcement (FDLE), those findings were inconclusive. Duckett requested the full results of his DNA testing to allow for further analysis. After this Court's intervention, Duckett obtained

those results and an analysis of the underlying data.[1]  That

analysis, however, also concluded that the results were

inconclusive.

With these issues resolved, we now address Duckett's appeal

and habeas petition.  For the reasons that follow, we affirm the

circuit court's order summarily denying Duckett's fifth successive

postconviction motion.  We also deny his habeas petition.[2]

Accordingly, we lift the stay of execution previously imposed and

decline to hold oral argument.

I

On the night of May 11, 1987, Duckett was the only police

officer on patrol for the city of Mascotte, Florida.  Between 10:00

and 11:00 p.m., he noticed a young girl, Teresa McAbee, loitering

outside a convenience store with a sixteen-year-old boy.  After

asking the store clerk for Teresa's name and age, Duckett

approached Teresa and ultimately sat her in the front passenger

seat of his patrol car—the last place she was seen alive.  The next

---

1.  *See Duckett v. State* (*Duckett VI*), 431 So. 3d 990, 992 (Fla. 2026).

2.  We have jurisdiction.  *See* art. V, § 3(b)(1), (9), Fla. Const.

- 3 -

morning, her body was found in a lake less than a mile from the store. According to the medical examiner, Teresa had been sexually assaulted, strangled, and drowned.

Circumstantial evidence gathered by investigators implicated Duckett as the perpetrator. Among other things, unique tracks found at the murder scene matched tires from Duckett's patrol car. The police also discovered Teresa's and Duckett's comingled fingerprints on the hood of his car, even though he denied having seen her sit there.

In light of these facts and others, a jury found Duckett guilty of first-degree murder and sexual battery. As to the first-degree murder conviction, the jury recommended he receive the death penalty by an eight-to-four vote. Subsequently, the trial court found two aggravating circumstances: (1) that Duckett murdered Teresa McAbee during the commission of, or immediately after, a sexual battery; and (2) that her murder was especially heinous, atrocious, or cruel. Weighing those aggravators against the mitigating evidence offered by the defense, the court accepted the jury's recommendation and sentenced Duckett to death.

Duckett appealed to this Court, raising both guilt- and penalty-phase claims, but we affirmed his convictions and death sentence. *Duckett v. State*, 568 So. 2d 891, 891 (Fla. 1990). Since then, Duckett has unsuccessfully sought postconviction relief in both state and federal court. *See Duckett v. State*, 918 So. 2d 224, 227 (Fla. 2005) (affirming denial of initial postconviction motion and denying habeas petition); *State v. Duckett*, Nos. 87-CF-1347(01), 88-CF-0262 (Fla. 5th Cir. Ct. June 9, 2008) (denying first successive postconviction motion, no appeal taken); *Duckett v. McDonough*, 701 F. Supp. 2d 1245, 1250 (M.D. Fla. 2010) (denying federal habeas petition); *Duckett v. State*, 148 So. 3d 1163, 1166 (Fla. 2014) (affirming denial of second successive postconviction motion); *Duckett v. State*, 231 So. 3d 393, 395 (Fla. 2017) (affirming denial of third successive postconviction motion); *Duckett v. State*, 260 So. 3d 230, 230-31 (Fla. 2018) (affirming denial of fourth successive postconviction motion).

On February 27, 2026, the Governor signed Duckett's death warrant. This prompted Duckett to file a motion, which he later amended, seeking postconviction DNA testing under section 925.11

and rule 3.853.[3]  *Duckett v. State* (*Duckett VI*), 431 So. 3d 990, 992

(Fla. 2026).  As we explained in our *Duckett VI* opinion:

> The sample he wanted tested was a 1987 swab from the victim's underwear mounted on a slide (called "Q-6(3)"), which had continuously been in the State's possession. The swab contained a small number of sperm heads. Duckett contended that DNA testing would show that the sperm was not his, meaning that someone else committed the murder and he is actually innocent.
>
> Over two decades ago, during Duckett's initial postconviction proceedings, we were informed that certain items of clothing introduced into evidence could possibly be tested for DNA, including Q-6(3).  We relinquished jurisdiction to the circuit court to allow for determination of "whether there in fact existed clothing that could be tested for DNA."  On remand, the examiner for FDLE determined that because Q-6(3) had deteriorated and contained too few sperm heads, the DNA testing methods then available would not have produced any conclusive results.  The examiner added that any attempt to test the sample would have destroyed it. Outside agencies confirmed the FDLE examiner's concerns.  Thus, no testing was performed on Q-6(3).

*Id.* (citations omitted).

---

3.  Duckett also filed demands for public records from several agencies under Florida Rule of Criminal Procedure 3.852(h) and (i). After a hearing, the circuit court granted some of those demands, ordering the relevant agencies to produce the records by the scheduled deadline.  The court, however, denied the rest of the demands based on the agencies' respective objections.  Duckett has not challenged these denials on appeal.

Noting these background facts, Duckett argued that the sample should be tested using newer technology capable of producing more reliable DNA results from small, deteriorated samples.  The State agreed that testing could be conducted, and the circuit court granted Duckett's rule 3.853 motion.  *Id.* The sample "was ultimately sent to a private laboratory requested by the State called DNA Labs International, Inc. (DLI)."  *Id.* at 992-93.

Two days after his motion for DNA testing was granted, Duckett filed his fifth successive postconviction motion under rule 3.851, in which he raised two claims.  For his first claim, he asserted that (1) his impending execution is unconstitutional because he is actually innocent; (2) the forthcoming DNA testing results would provide newly discovered evidence of his actual innocence;[4] and (3) newly discovered evidence shows the State violated *Brady*[5] by failing to disclose a 2012 letter sent from the

---

4.  "Per our scheduling order and absent a stay, Duckett was required to file his successive postconviction motion before DNA testing results were available."  *Id.* at 993 n.4.

5.  *Brady v. Maryland*, 373 U.S. 83 (1963).

U.S. Department of Justice to the State Attorney's Office regarding expert testimony offered at his guilt-phase trial. As for his second claim, Duckett argued that the truncated nature of the warrant process is unconstitutional. He also moved for a stay of execution.

Although DNA testing was not yet complete, the circuit court issued an order summarily denying Duckett's successive postconviction motion and declining to stay his execution. *Duckett VI*, 431 So. 3d at 993. Duckett appealed that order. *Id.* At the same time, he moved for a stay of execution and petitioned for a writ of habeas corpus. *Id.* We granted Duckett's motion to stay his execution. *See Duckett v. State*, 428 So. 3d 40, 40 (Fla. 2026) (citing § 922.06(1), Fla. Stat.).

Testing was completed the next day. FDLE filed DLI's report and relayed in an email that the report indicated the testing was "inconclusive." *Duckett VI*, 431 So. 3d at 993. This was because "neither FDLE nor DLI ha[d] the capability to complete the testing process by performing a statistical analysis on the data that was generated." *Id.* Duckett requested that FDLE and DLI release the

underlying testing data to him so that such an analysis could be performed. *Id.* at 994.[6] The circuit court denied this request. *Id.*

On appeal, we partially reversed, holding that the circuit court erred in denying Duckett the full results of the DNA testing. *Id.* at 997.[7] Accordingly, we remanded for the underlying data to be provided to Duckett so that the statistical analysis, referenced by FDLE, could be performed. *Id.*

Subsequently, Duckett sent the underlying data to a bioinformaticist for analysis.[8] That expert opined that "the dataset did not contain sufficient information to support a reliable contributor conclusion." He added: "I cannot state, to a reasonable degree of scientific certainty, that James Duckett either is or is not

---

6. Additionally, Duckett again filed public records demands under rule 3.852(i), this time seeking the testing data as well as DLI's testing process and protocols. *Id.*

7. We affirmed the circuit court's denial of Duckett's public records demands. *Id.*

8. The State also had the data sent for analysis by another bioinformaticist. We do not rely on that expert's report in reaching our conclusions here.

a contributor to the evidentiary DNA mixture. The available data are insufficient to support either an inclusion or an exclusion."[9]

Upon receiving this analysis, Duckett requested an evidentiary hearing on DLI's testing process. The circuit court denied this request, reasoning that the rule 3.853 motion had already been "fully resolved," Duckett had received the complete results of the DNA testing, and he had not filed a new rule 3.851 motion seeking postconviction relief. The court denied Duckett's subsequent motion for rehearing.[10]

Accordingly, we now turn to Duckett's pending appeal and habeas petition.

II

We begin with Duckett's appeal of the circuit court's order

---

9. In *Duckett VI*, we recognized this outcome was possible. *See* 431 So. 3d at 995 n.11 ("[I]t is possible that, after conducting the statistical analysis that FDLE suggests is possible in this case, the entity performing the analysis will be unable to offer a definitive conclusion based on a comparison of Duckett's known DNA and the profile generated from the sample.").

10. Duckett appealed the denial of his request for an evidentiary hearing, but we dismissed for lack of jurisdiction.

summarily denying his fifth successive postconviction motion.[11]  We review de novo the summary denial of this motion and affirm if the claims raised therein "are untimely, procedurally barred, legally insufficient, or refuted by the record."  *Hutchinson v. State*, 416 So. 3d 273, 279 (Fla.) (citing *Cole v. State*, 392 So. 3d 1054, 1060-61 (Fla. 2024)), *cert. denied*, 145 S. Ct. 1980 (2025); *see also* Fla. R. Crim. P. 3.851(f)(5)(B).

## A

First, Duckett argues that the warrant proceedings have denied him due process of law.  He objects to the truncated and "surprise" nature of the warrant process as well as the circuit court's handling of issues related to the DNA testing.  In particular, he asserts that the court violated his due process rights by denying his fifth successive postconviction motion before DNA results became available.  This claim fails.

To the extent Duckett bases this claim on the warrant period's length and unanticipated issuance, we have rejected these same arguments countless times before.  *See Jones v. State*, 419 So. 3d

---

11. Duckett does not appeal the circuit court's denial of his *Brady* claim.

619, 625-26 (Fla.) (collecting cases), *cert. denied*, 146 S. Ct. 79 (2025). Notably, given our stay of execution, Duckett's warrant period has lasted almost four months—far longer than other warrant periods that we have found constitutionally acceptable. *See id.* at 625 (rejecting claim that thirty-day warrant period violates due process).

Duckett also directs his due process arguments at the circuit court's handling of the DNA testing process during the warrant period. But these arguments, assuming they have any merit, have been rendered moot by later developments. Although the circuit court summarily denied Duckett's fifth successive postconviction motion before DNA testing was completed, we then stayed his execution. Thereafter, we ordered that Duckett be provided the full results of his testing so that a statistical analysis could be performed on the underlying data. *See Duckett VI*, 431 So. 3d at 997. Duckett obtained the analysis he sought, and the results were not favorable to him. In light of all this, we are satisfied that the requirements of due process were met. *See Barwick v. State*, 361 So. 3d 785, 790 (Fla. 2023) ("Due process requires that a defendant be given notice and an opportunity to be heard on a matter before it

- 12 -

is decided." (quoting *Asay v. State*, 210 So. 3d 1, 27 (Fla. 2016))).

B

Second, Duckett contends that he is actually innocent and his execution would therefore violate the Eighth and Fourteenth Amendments to the U.S. Constitution. This claim is meritless.

As an initial matter, Duckett does not have a viable newly discovered evidence claim based on the DNA testing results. To prove such a claim, Duckett must show two things: (1) that the evidence was not known by the trial court, himself, or his counsel at the time of trial, and that neither he nor his counsel could have known of it by the exercise of diligence; and (2) that the evidence is "of such nature that it would probably produce an acquittal on retrial." *Preston v. State*, 970 So. 2d 789, 797 (Fla. 2007) (quoting *Jones v. State*, 709 So. 2d 512, 521 (Fla. 1998)). Assuming he has made the first showing, he has failed to make the second. Based on the analysis conducted by Duckett's own expert, the DNA testing results were inconclusive. Thus, he has not shown that this DNA evidence, considered alongside all the evidence introduced at trial and throughout his postconviction proceedings, would probably lead to an acquittal on retrial.

- 13 -

So, Duckett is left to assert a freestanding actual innocence claim based on the evidence he has presented throughout his postconviction proceedings. However, "Florida does not recognize an independent claim of actual innocence in postconviction proceedings." *Sweet v. State*, 293 So. 3d 448, 453 (Fla. 2020) (citing *Elledge v. State*, 911 So. 2d 57, 78 (Fla. 2005)). And as we have held, "Florida's refusal to recognize postconviction actual innocence claims does not violate the Eighth Amendment." *Id.* at 454 (citing *Tompkins v. State*, 994 So. 2d 1072, 1088-89 (Fla. 2008)).

Accordingly, Duckett is not entitled to relief on any of the grounds asserted on appeal, and we affirm the circuit court's order.

III

We now consider Duckett's habeas petition, in which he again brings a claim of actual innocence and further argues that this Court's piecemeal adjudication of the claims raised throughout his various postconviction proceedings denied him due process. He contends that judicial intervention is necessary to prevent a manifest injustice based on the cumulative effect of the alleged errors made in disposing of his prior postconviction claims.

- 14 -

The claims raised in Duckett's habeas petition essentially duplicate those on appeal, and they fail for the same reasons given above. Insofar as he seeks to relitigate our decisions in his earlier postconviction proceedings, his claims are procedurally barred. *See Bates v. State*, 416 So. 3d 312, 322 (Fla.) (citing Fla. R. Crim. P. 3.851(e)), *cert. denied*, 146 S. Ct. 66 (2025).

Accordingly, we deny Duckett's habeas petition.

## IV

For the foregoing reasons, we affirm the summary denial of Duckett's fifth successive postconviction motion. Additionally, we deny his habeas petition. Having denied relief, we lift our stay of execution. No motion for rehearing will be considered. The mandate shall issue immediately.

It is so ordered.

COURIEL, C.J., and MUÑIZ, GROSSHANS, FRANCIS, SASSO, and TANENBAUM, JJ., concur.
LABARGA, J., concurs in result.

An Appeal from the Circuit Court in and for Lake County,
  Brian Jerome Welke, Judge
  Case No. 351987CF001347AXXXXX
And an Original Proceeding – Habeas Corpus

Suzanne Keffer, Capital Collateral Regional Counsel, Brittney Lacy, Assistant Capital Collateral Regional Counsel, Mary Elizabeth Wells,

Special Assistant Capital Collateral Regional Counsel, and Courtney M. Hammer, Staff Attorney, Office of Capital Collateral Regional Counsel, Southern Region, Fort Lauderdale, Florida,

    for Appellant/Petitioner

James Uthmeier, Attorney General, and Charmaine M. Millsaps, Senior Assistant Attorney General, Tallahassee, Florida, Nicole Rochelle Smith, Senior Assistant Attorney General, Tampa, Florida, and Naomi Nichols, Senior Assistant Attorney General, Daytona Beach, Florida,

    for Appellee/Respondent